IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KRISTINE SHIRK

    Plaintiff,

v.                                                            No. 17-CV-1129 MCA/KK

JACKIE GONZALES,
SPECIALTY RETAILERS, INC.
d/b/a BEALLS,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Kristine Shirk's *Motion for Remand*. [Doc. 6] The Court, having considered the submissions, the relevant law, and otherwise being fully informed in the premises, hereby **DENIES** the *Motion*.

## BACKGROUND

Plaintiff filed this suit in the First Judicial District Court, in the County of Santa Fe, New Mexico, against her former employer, Specialty Retailers, Inc., and her former immediate supervisor, Jackie Gonzales. [Doc. 1-1, ¶¶ 10, 40] Defendants removed this suit to this Court, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). [Doc. 1, p. 1] Plaintiff now moves for remand, arguing only that Defendants have not proven that the jurisdictional amount is in controversy. [Doc. 6, ¶ 5]

Plaintiff alleges three causes of action: "Prima Facie Tort;" "Discrimination on the Basis of Race in Violation of the New Mexico Human Rights Act;" and "Negligent Hiring, Training and Supervision." [Doc. 1-1, ¶¶ 9-48] While the parties dispute

1

whether Plaintiff's first cause of action is against both Defendants or only Defendant Gonzales [Doc. 6, ¶ 1; Doc. 8, pp. 8-9], for purposes of this decision it is only relevant that Plaintiff brings her second count, alleging discrimination in violation of the New Mexico Human Rights Act (NMHRA), against both Defendants.[1] [Doc. 1-1, ¶¶ 38-41; Doc. 6, ¶ 1]

In their *Notice of Removal*, Defendants assert, and submit evidence, that Plaintiff is a citizen of New York [Doc. 1, ¶¶ 12-13; Doc. 1-3, p. 4; Doc. 1-4, p. 1, ¶ 4; Doc. 1-4, p. 4], Defendant Specialty Retailers is a citizen of Texas[2] [Doc. 1, ¶¶ 9-11; Doc. 1-5, ¶¶ 3, 5], and Defendant Gonzales is a citizen of Colorado [Doc. 1, ¶¶ 7-8, Doc. 1-4, ¶ 2]. Plaintiff does not contest that her citizenship is diverse from all Defendants (and was so at the time she filed her *Complaint*)[3] and that no defendant is a citizen of New Mexico.

As to the amount in controversy, Defendants in part rely on a settlement demand sent by Plaintiff's Counsel on October 11, 2017. In that settlement demand, Plaintiff offered to settle her claim for $100,000. Plaintiff identified her compensatory damages as $32,184.50, and asserted that she has also suffered emotional distress damages, and that she seeks punitive damages and attorney's fees. [Doc. 1-3, pp. 4-5]

---

[1] An individual may be sued for discrimination contrary to the NMHRA. NMSA 1978, § 28-1-7(I); *Lobato v. State Env't Dept.*, 2012-NMSC-002, ¶ 8, 267 P.3d 65; *Sonntag v. Shaw*, 2001-NMSC-015, ¶¶ 12-13, 22 P.3d 1188.

[2] Defendant Specialty Retailers is a corporation incorporated in Texas and its principal place of business is in Texas. [Doc. 1-5, ¶¶ 3, 5]

[3] "[T]he relevant time period for determining the existence of complete diversity is the time of the filing of the complaint." *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1239 (10th Cir. 2015).

Factually, Plaintiff alleges that she worked for Defendant Specialty Retailers at a Bealls store in Taos, New Mexico, from August 2015 to July 2016. [Doc. 1-1, ¶¶ 11, 28] She alleges that Defendant Gonzales created a hostile work environment which began a week after Plaintiff began working for Specialty Retailers. Plaintiff alleges that Defendant Gonzales accused Plaintiff of thinking she was better than everyone else, "constantly and consistently verbally abused" Plaintiff, and engaged in "workplace bullying." [Doc. 1-1, ¶¶ 15, 19] Plaintiff also alleges that another employee called her an old lady and bullied her in text messages, and that although Plaintiff alerted Defendant Specialty Retailers about the text messages, Defendant Specialty Retailers failed to address the harassment. [Doc. 1-1, ¶¶ 21-22] Plaintiff's father died and Plaintiff did not request leave because she "was fearful of asking for the time off because the Defendant Gonzales was generally rude" to her. [Doc. 1-1, ¶ 18] Despite Plaintiff's complaints to management about workplace bullying, Defendant Specialty Retailers did nothing to remedy the misconduct. [Doc. 1-1, ¶ 25] Plaintiff does not allege a certain amount of damages; however she seeks back pay, front pay, lost benefits, damages for emotional distress, mental anguish and suffering, punitive damages, pre- and post-judgment interest, attorney's fees, costs, and expenses. [Doc. 1-1, pp. 7-8]

Now, in her *Motion for Remand*, Plaintiff states that she "would stipulate that her claim for damages against each individual defendant exclusive of costs and interest and attorney's fees does not exceed $75,000.00, and of the aggregated claims[,] do not exceed $75,000.00." [Doc. 6, ¶ 5]

**ANALYSIS**

*Legal Standards*

Defendants assert that this Court has diversity jurisdiction pursuant to Section 1332. Diversity jurisdiction is conferred upon the federal courts under Section 1332(a) in cases in which the "matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]" Plaintiff does not dispute that the parties are diverse; however, Plaintiff argues that her claims "do not exceed $75,000.00 for each Defendant, either severally or in Count II, jointly." [Doc. 6, ¶ 5]

The Court applies the standards and procedures set forth in 28 U.S.C. §§ 1446 and 1447 in considering Plaintiff's *Motion for Remand*. "Track[ing] the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure," Section 1446(a) requires "a defendant seeking to remove a case to a federal court [to] file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553 (2014) (quoting 28 U.S.C. § 1446(a)). The amount in controversy is an "estimate of the amount that will be put at issue in the course of the litigation." *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008).

When the plaintiff's initial pleading does not state the amount in controversy, the notice of removal may assert the amount in controversy. Section 1446(c)(2)(A). If the defendant's allegation regarding the amount in controversy is contested, Section 1446(c)(2)(B) states that "removal of the action is proper on the basis of an amount in controversy asserted" by the defendant "if the district court finds, by the preponderance

of the evidence, that the amount in controversy exceeds" the jurisdictional minimum. A defendant seeking removal can establish jurisdictional facts by a preponderance of the evidence in several ways, including, *inter alia*:

> by contentions, interrogatories or admissions in state court; by calculation from the complaint's allegations[;] by reference to the plaintiff's informal estimates or settlement demands[;] or by introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands.

*McPhail*, 529 F.3d at 954 (internal quotation marks and citation omitted).

The district court's jurisdiction attaches at the time of removal. *See St. Paul Mercury Indem. Co. v Red Cab Co.*, 303 U.S. 283, 293 (1938) (stating that "events occurring subsequent to removal which reduce the amount recoverable, whether beyond the plaintiff's control or the result of his volition, do not oust the district court's jurisdiction once it has attached"). Thus, where a plaintiff, "after removal, by stipulation, by affidavit, or by amendment of his [or her] pleadings, reduces the claim below the requisite amount, this does not deprive the district court of jurisdiction." *Id.* at 292; *see also Rael v. Geico General Ins. Co.*, Civ. No. 17-338 SCY/LF, Doc. 28, 2017 WL 3051953, * 4 (D.N.M. June 27, 2017) (concluding that post-removal stipulation not to seek more than $75,000 did not deprive the court of jurisdiction); *Miranda v. Strike, LLC*, Civ. No. 16-1062 JCH/WPL, Doc. 31, 2017 WL 3172766, * 2 (D.N.M. May 16, 2017) (same). Further, once jurisdiction attaches, "[t]he inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction." *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir. 1998) (internal quotation marks and citation omitted).

In calculating the amount of damages to determine whether the requisite jurisdictional amount is in controversy, the Court may aggregate the damages claimed by a single plaintiff in multiple claims against a single defendant, but the Court may only aggregate a plaintiff's claims as against multiple defendants if the defendants would be jointly liable. *Alberty v. W. Sur. Co.*, 249 F.2d 537, 538 (10th Cir. 1957) ("[W]here a single plaintiff has multiple claims against a single defendant or against two or more defendants jointly, and the claims are of such character that they may properly be joined in one suit, the aggregate amount thereof is for the purpose of federal jurisdiction the amount in controversy."); *compare* 14AA Charles Alan Wright, et. al, Federal Practice & Procedure Jurisdiction, § 3704 (4th ed. 2017) (stating that, for determining the amount in controversy, generally a plaintiff's claims against a single defendant may be aggregated, however, the amount in controversy may not be aggregated against multiple defendants); *Travelers Prop. Cas. v. Good*, 689 F.3d 714, 717 (7th Cir. 2012) ("The anti-aggregation rule applies . . . to those [cases] brought by a single plaintiff against multiple defendants."). Here, the parties agree that Count II is brought against both Defendants, however, neither party addresses whether Defendants would be jointly liable under Count II. Regardless, the Court need not dwell on this legal nicety, nor consider the aggregate amount of damages for multiple counts against each Defendant, because Plaintiff's claims against either Defendant, individually, under Count II alone, meet the requisite jurisdictional amount.

*Plaintiff's NMHRA Claim*

6

Plaintiff sues each Defendant for violation of the NMHRA. Pursuant to the NMHRA, Plaintiff may recover "actual damages and reasonable attorney fees." NMSA 1978, § 28-1-13(D). Actual damages may include back pay and front pay. *See Smith v. FDC Corp.*, 1990-NMSC-020, ¶¶ 20, 24, 787 P.2d 433 (discussing damages for lost earnings under the NMHRA, including back and front pay). "[W]hen a statute permits recovery of attorney's fees a reasonable estimate may be used in calculating the necessary jurisdictional amount in a removal proceeding based upon diversity of citizenship." *Miera*, 143 F.3d at 1340. However, while included when calculating the amount in controversy, *Bell v. Preferred Life Assurance Society*, 320 U.S. 238, 240 (1943), "[p]unitive damages are . . . not recoverable under the Human Rights Act." *Trujillo v. N. Rio Arriba Elec. Co-op, Inc.*, 2002-NMSC-004, ¶ 30, 41 P.3d 333 (internal quotation marks and citation omitted).

With these standards in mind, the Court turns to calculating a reasonable estimate of the amount in controversy. As to lost wages, Plaintiff began working for another employer less than a month after leaving employment with Defendant Specialty Retailers. [Doc. 1-1, ¶ 28] Thus, as far as actual lost wages, Plaintiff could recover at most approximately one month's wages. In Plaintiff's settlement demand, she states that she made $14.08 working for Defendant. [Doc. 1-3, p. 4] Thus, the Court will estimate Plaintiff's actual lost wages to be $2,300.[4]

---

[4] The Court calculated this amount as follows: 40 hours per week, times 4 weeks, times $14.08, rounded up to the nearest hundred.

In addition to these lost wages, Plaintiff also claims (in her settlement demand) that she moved to gain employment, first to Colorado and then to New York, and her cost of living (particularly, her rent payment) substantially increased when she moved. [Doc. 1-1, p. 4] Plaintiff thus demanded $30,000 to compensate her for "differential pay over three years." [Doc. 1-3, pp. 4-5] The Court does not decide, at this time, whether such damages are compensable under the NMHRA. However, the Court does conclude that Plaintiff's demand for such damages, taken together with New Mexico law making the request arguable, puts the amount in controversy. *See Smith*, 1990-NMSC-020 ¶¶ 20, 24 (indicating that damages for violation of the NMHRA should "mak[e] victims of discrimination whole" (internal quotation marks and citation omitted)). Also in controversy is Plaintiff's request for damages based on her loss of $1000.00 in non-refundable rent after her employment with Defendant Specialty Retailers ended based on her inability to give her landlord in New Mexico one month's notice. Plaintiff may be able to put on evidence demonstrating that this cost was related to her loss of employment with Specialty Retailers, and thus the Court accepts this amount for purposes of estimating Plaintiff's damages. However, Plaintiff also requests, in her demand letter, damages for her costs for interviewing in Taos with Defendant Specialty Retailers and her costs for moving to Taos to take the position. As to this amount, Plaintiff would have incurred these costs whether or not Defendants allegedly discriminated against her, and whether or not she continued to work for Defendant Specialty Retailers. Accordingly, the Court will not consider such purported damages in determining the amount in controversy. In sum, as to actual damages, including back

pay, a cost of living differential, and consequential damages, the Court estimates that $33,300 is in controversy. No party submitted evidence as to front pay damages, and thus no such amount has been included in the Court's estimate of the amount in controversy.

Plaintiff also seeks emotional distress damages, which are recoverable under the NMHRA. In order to make a reasonable estimate of the amount of emotional distress damages in controversy, the Court considers verdict amounts for emotional distress damages in similar cases. Readily accessible and identifiable[5] verdicts for claims of discrimination based on race discrimination in this District in the recent past include awards for emotional distress damages ranging from $25,000 to $50,000. *Osuagwu v. Gila Reg'l Med. Ctr.*, No. 11cv1 MV/SMV, Doc. 352 (D.N.M. Nov. 7, 2013) (awarding $25,000 in emotional distress damages for race discrimination claim); *Jackson v. Wexford Health Sources*, Civ. No. 07-536 JP/WDS, Doc. 68 (D.N.M. Oct. 29, 2008) (awarding $50,000 in emotional distress damages for race discrimination claim); *see also Rivera v. Smith's Food & Drug Ctrs., Inc.*, No. Civ. 5-1049 RB/ACT, Doc. 147 (D.N.M. March 7, 2007) (awarding $26,000 in emotional distress damages for retaliation contrary to Title VII and the NMHRA); *Lopez v. City of Albuquerque*, Civ. No. 08-806 LH/ACT, Doc. 141 (D.N.M. November 2, 2010) (awarding $1,200 in total damages to Plaintiff for claim of sexually hostile work environment). Based on these verdicts, the Court estimates that $50,000 in emotional distress damages are at issue in this case.

---

[5] The Court used the District of New Mexico's Document Retrieval System, available at http://www.nmcourt.fed.us/Drs-Web/input.

Finally, the Court considers the amount of attorney's fees reasonably in controversy. Based on recent awards in similar cases in this District, if Plaintiff is successful on her NMHRA claim, her attorney's fees could amount to well over $100,000. *See Lopez v. City of Albuquerque*, Civ. No. 08-806 LH/ACT, Doc. 159 (D.N.M. April 11, 2011) (awarding attorney's fees of $101,275.76); *Rivera v. Smith's Food & Drug Centers*, No. Civ. 05-1049 RB/ACT, Doc. 177 (D.N.M. June 28, 2007) (awarding attorneys' fees of $219,238.03).

Thus, considering all of the damages Plaintiff claims for violation of the NMHRA, the amount in controversy well exceeds the jurisdictionally minimum amount of over $75,000. In the present case at least $183,300 is in controversy: $33,300 in lost earnings and consequential damages, $50,000 in emotional distress damages, and (a conservatively estimated) $100,000 in potential attorneys' fees. As pleaded, Plaintiff could recover this amount from either Defendant Gonzales or from Defendant Specialty Retailers, as the NMHRA creates separate liability against each of them. Thus, the Court finds that Defendants have shown, by a preponderance of the evidence, that more than $75,000, exclusive of interests and costs, is in controversy as to each Defendant.[6] *See McPhail*, 529 F.3d at 954 (stating that a defendant need only establish that a particular amount is "in controversy," that is, provide an "estimate" of "what the plaintiff stands to

---

[6] A sample of jury verdict amounts in race discrimination cases further supports the Court's conclusion that the amount in controversy well exceeds $75,000. *Employment Practice Liability: Jury Award Trends & Statistics* (Thomson Reuters) (2017) (indicating that, for the nationwide sample, the median award for race discrimination cases was $200,000).

recover" based on "contested factual allegations that support the estimate" (internal quotation marks and citation omitted)).

Plaintiff's demand does not alter the Court's estimation of the amount in controversy. Plaintiff offered to settle her claim for $100,000. [Doc. 1-3, p. 5] However, this offer does not break down Plaintiff's damages by claim or Defendant. As such, Plaintiff argues that she "never asserted that her claim against any single Defendant exceeds $75,000.00." [Doc. 6, ¶ 4] She also points out that this amount includes costs, interest, and attorney's fees. [Doc. 6, ¶ 4] It is true that a reasonable inference from this settlement offer is that Plaintiff is seeking less than $75,000 from at least one Defendant, if not both Defendants. This amount could reflect a belief that Plaintiff's claims against each Defendant individually are not above $75,000. Or, alternatively, the offer could reflect that early in this case fewer attorneys' fees have been billed, and the Plaintiff has expended less time and money to pursue the law suit. In any event, Plaintiff's ambiguous settlement demand does not change the fact that, based on the allegations in Plaintiff's *Complaint* discussed above, well over $75,000 is at issue as to each Defendant.

Plaintiff's post-removal offer to stipulate "that her claim for damages against each individual Defendant exclusive of costs and interest and attorney's fees does not exceed $75,000.00" does not change the conclusion that jurisdiction is present. [Doc. 6, ¶ 5] This post-removal offer to stipulate is irrelevant to the determination of whether this Court has jurisdiction. *St. Paul Mercury Indem. Co.*, 303 U.S. at 292-93 (stating that where a plaintiff, "after removal, by stipulation, by affidavit, or by amendment of his [or her] pleadings, reduces the claim below the requisite amount, this does not deprive the

district court of jurisdiction"). Because this Court had jurisdiction at the time of removal, remand is improper.

Given that the jurisdictional amount in controversy is established as to each Defendant separately for Count II alone, the Court need not attempt to determine the amount in controversy for Counts I and III. As this Court has jurisdiction over each Defendant pursuant to Count II, the Court concludes that it is appropriate to exercise supplemental jurisdiction over Counts I and III. 28 U.S.C. § 1367(a) (stating that the court has "supplemental jurisdiction over all other claims that are so related to claims" within the court's original jurisdiction, and that "[s]uch supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties"); *see also Exxon Mobil Corp. v. Allapattah Servs, Inc.*, 545 U.S. 546, 558-59 (2005) (holding that Section § 1367(a) "confers supplemental jurisdiction over all claims, including those that do not independently satisfy the amount-in-controversy requirement").

Plaintiff's remaining arguments may be summarily dismissed. While Plaintiff protests that "Defendants are court shopping" [Doc. 11, p. 1], the proper application of Section 1332 allows Defendants to remove this case to federal court. Plaintiff further argues that Defendants have filed a motion to compel arbitration, and that "the measure of the jurisdictional value of Plaintiff's case depends on whether the case is heard by a jury or by an arbitrator" because "attorney's fees will not likely be as significant" if the case is arbitrated. [Doc. 11, p. 4] The Court is not persuaded by this novel theory which lacks any legal citation or support. And, even if this argument merited consideration, it would not be persuasive because under the Court's evaluation of damages excluding

attorney's fees, an estimated $83,300 is at issue in this case – exceeding the statutory minimum. Thus, the Court will deny Plaintiff's request to remand this case to state court.

**CONCLUSION**

**WHEREFORE**, for the foregoing reasons, the Court hereby **DENIES** Plaintiff's *Motion for Remand.* [Doc. 6]

**SO ORDERED** this 29th day of May, 2018, in Albuquerque, New Mexico.

_____
M. CHRISTINA ARMIJO
United States District Judge