IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KRISTINE SHIRK,

    Plaintiff,

v.                                                               No. 17-CV-1129 MCA/KK

JACKIE GONZALES,
SPECIALTY RETAILERS, INC.
d/b/a BEALLS,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *Defendants' Motion to Compel Arbitration under 9 U.S.C. § 3, or, Alternatively, Under the New Mexico Arbitration Act*. [Doc. 19] The Court, having considered the submissions, the relevant law, and otherwise being fully informed in the premises, hereby **GRANTS** the *Motion*.

**BACKGROUND**

Defendants bring this *Motion to Compel Arbitration*. [Doc. 19] Defendants argue that when Plaintiff accepted employment with Defendant Specialty Retailers, she agreed to a "Dispute Resolution Program," which requires that dispute be submitted to arbitration. [Doc. 19, p. 2] Plaintiff, however, resists arbitration on several grounds. First, she asserts that the Court need not apply the Federal Arbitration Act (FAA) because "Plaintiff was not engaged in interstate commerce" – instead she was "a clerk who sold makeup over the counter in a small town." [Doc. 22, p. 1] Plaintiff further argues that the arbitration agreement is unconscionable under New Mexico law because "the only

1

disputes that are subject to the arbitration agreement are those claims that likely may be brought by *employees*." [Doc. 22, p. 3] Plaintiff also argues that Defendant Jacque Gonzales is not a party to the arbitration agreement, and thus her claims against Defendant Gonzales do not need to be arbitrated. [Doc. 22, pp. 5-6] Finally, Plaintiff submits that Defendant Specialty Retailers has refused to provide her with a copy of her personnel file to date, which Plaintiff states "may contain information or evidence or other agreements or personnel rules bearing on the issues raised herein[.]" [Doc. 22, p. 7] Thus, Plaintiff requests this Court to "stay resolution of this motion pending some nominal discovery by the Plaintiff." [Doc. 22, p. 7] The Court addresses the parties arguments below, though not in the order set out in their briefs.

**ANALYSIS**

*Discovery*

Plaintiff asks this Court to "stay resolution of this motion pending some nominal discovery by the Plaintiff." [Doc. 22, p. 7] Plaintiff states that her personnel file "would presumably contain this arbitration agreement, any other agreements she executed with Defendants, and anything else relating to her employment with Defendants." [Doc. 22, p. 7] Plaintiff thus submits that her "personnel file may contain information or evidence or other agreements or personnel rules bearing on the issues raised herein." [Doc. 22, p. 7]

Plaintiff has not demonstrated that the discovery she requests would assist her in opposing Defendant's *Motion to Compel Arbitration*.

2

> In enacting the FAA, Congress intended that proceedings to compel arbitration be "expeditious and summary," "with only restricted inquiry into factual issues." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). To obtain discovery in opposition to a motion to compel arbitration, the arbitration opponent must at least show how discovery would "assist[ ] them in opposing the motion to compel arbitration." *Wolff v. Westwood Mgmt., LLC*, 558 F.3d 517, 521 (D.C.Cir. 2009).

*THI of New Mexico at Hobbs Ctr., LLC v. Spradlin*, 532 F. App'x 813, 819 (10th Cir. 2013) (unpublished decision). Instead, she makes an overly broad request for her entire personnel file. Moreover, while she states that she "may" have executed some other agreements with Defendants, but she does not state the subject of those hypothetical agreements, or how they would contradict the "Dispute Resolution Program," or otherwise have any bearing on the *Motion to Compel Arbitration*. As such, Plaintiff has not met her burden of demonstrating that she needs discovery to assist her in opposing the *Motion to Compel Arbitration*. Plaintiff's requests for discovery and to stay this matter are denied.

### *Whether the Contract Involves Interstate Commerce*

The FAA defines commerce as:

> commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation.

9 U.S.C. § 1. The FAA goes on to declare that:

> [a] written provision in . . . *a contract evidencing a transaction involving commerce* to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing

> controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The Supreme Court has construed the words "involving commerce" as used in the FAA "as broadly as the words 'affecting commerce,'" which "normally mean a full exercise of constitutional power." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 277 (1995). Thus,

> [b]ecause the statute provides for "the enforcement of arbitration agreements within the full reach of the Commerce Clause," *Perry v. Thomas*, 482 U.S. 483, 490, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987), it is perfectly clear that the FAA encompasses a wider range of transactions than those actually "in commerce"-that is, "within the flow of interstate commerce," *Allied-Bruce Terminix Cos.*, *supra*, at 273, 115 S.Ct. 834 (internal quotation marks, citation, and emphasis omitted).

*Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). "Congress' Commerce Clause power may be exercised in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice subject to federal control." *Id.* at 56-57 (internal ellipses, quotation marks and citations omitted).

Plaintiff argues that *she* was not involved in interstate commerce – she submits that she merely sold makeup in a small town. [Doc. 22, p. 1] Moreover, she argues that there has been no showing that "Plaintiff, while performing her duties under the employment contract was working 'in' commerce, was producing goods for commerce, or was engaging in activity that affected commerce," citing *Bernhardt v. Polygraphic Company*, 350 U.S. 198, 200-201 (1956) (concluding that the Court lacked jurisdiction over the case because "[t]here is no showing that petitioner while performing his duties

4

under the employment contract was working 'in' commerce, was producing goods for commerce, or was engaging in activity that affected commerce, within the meaning of our decisions"). [Doc. 22, p. 1]

Supreme Court cases more recent than *Bernhardt*, however, have elucidated the type of "showing" that is sufficient to evidence a transaction involving commerce. First, in *Allied-Bruce Terminix*, 513 U.S. at 281-82, the Court held that a contract between a homeowner in Alabama and a local franchise of a national pest treatment company to inspect and treat for termites involved interstate commerce and thus was within the Court's jurisdiction pursuant to the FAA. The Court reasoned: "In addition to the multistate nature of Terminix [the national company] and Allied-Bruce [the franchise, which operated in multiple states], the termite-treating and house-repairing material used by Allied-Bruce in its (allegedly inadequate) efforts to carry out the terms of the Plan, came from outside Alabama." *Id.* at 282. The Court distinguished *Bernhardt* because it turned on a lack of a showing[1] concerning whether the petitioner was engaged in an activity that affected commerce. *Id.* at 271-72. By contrast, the showing in *Allied-Bruce Terminix* was sufficient. *Id.* at 282.

---

[1] The facts surrounding the agreement in *Bernhardt* are vaguely described by the Supreme Court. However, the Second Circuit's decision sets forth more detail: "Defendant, a New York corporation, made a written agreement in New York with plaintiff, then a resident of that State. The agreement provided for the employment of plaintiff as the superintendent of defendant's lithograph plant in Vermont." *Bernhardt v. Polygraphic Co*, 218 F.2d 948, 949 (2d Cir. 1955), *rev'd*, 350 U.S. 198 (1956). Neither Court discussed whether the employer's Vermont plant used products which traveled in interstate commerce. However, that pest control and house repair products traveled across state lines was clear, and relied upon, in *Allied-Bruce Terminix*.

Even more recently, our Supreme Court rejected the argument that the "involving commerce" provision within 9 U.S.C. § 2 does not apply to employment contracts, relying heavily on *Allied-Bruce Terminix*. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 113 (2001). In *Circuit City*, the plaintiff signed an agreement to arbitrate when he applied for employment with Circuit City, "a national retailer of consumer electronics." *Id.* at 109. In addition to holding that Section 2 of the FAA applies to employment contracts, the Court also rejected the plaintiff's alternative argument that an exception to the application of the FAA within 9 U.S.C. § 1 applied to employment contracts. The exception states that the FAA shall not "apply to contracts of employment of seamen, railroad employees, or any other class of workers *engaged in* foreign or interstate commerce." (Emphasis added). However, the Court determined that, while "involving commerce" as used in Section 2 (the general rule) "signals an intent to exercise Congress' commerce power to the full," the words "engaged in commerce" as used in Section 1 (the exception) are "words of art" "understood to have a more limited reach." *Circuit City Stores*, 532 U.S. at 115 (internal quotation marks omitted). Accordingly, the Court held that the FAA applies to most employment contracts, and that the Section 1 exception only applies to transportation workers. *Id.* at 119; *see also EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) ("Employment contracts, except for those covering workers engaged in transportation, are covered by the FAA.").

Applying these cases to the facts at hand, the showing in this case is sufficient for this Court to hold that the contract evidences "a transaction involving commerce" as required by Section 2 of the FAA. Here, Plaintiff alleges that she was living in Texas

6

when she accepted employment with Defendant Specialty Retailers. [Doc. 1-1, ¶ 11] Defendant Specialty Retailers is incorporated in Texas and its principal place of business is in Texas. [Doc. 1, ¶¶ 9-10] Defendant Specialty Retailers owns and operates Bealls department stores. [Doc. 1-1, ¶ 2] Plaintiff was hired as the "Estee Lauder counter manager" at the Bealls store in Taos, New Mexico. [Doc. 1-1, ¶ 10] At one point, Defendant Specialty Retailer's District Manager "offered Plaintiff employment in Defendant Specialty's Las Vegas, Nevada store." [Doc. 1-1, ¶ 26] These facts support the statement within the "Dispute Resolution Program" agreement itself that "[t]he Company is engaged in interstate commerce, and your employment involves such commerce." [Doc. 19-1, p. 23, ¶ H] Finally, by affidavit, a Compliance Manager for Stage Stores, Inc. (of which Specialty Retailers is a wholly owned subsidiary) averred that:

> [Specialty Retailers] engages in interstate commerce in many ways, including by: (i) selling products that out-of-state vendors supply; (ii) advertising in other states; (iii) operating retail stores in states other than New Mexico; (iv) being insured by out-of-state insurance carriers; and (v) conducting business through the use of interstate mail and telephone calls.

[Doc. 19-1, pp. 2-3, ¶¶ 1, 2, 12] Plaintiff has not challenged these statements. Because Specialty Retailers operates in several states and sells products which have travelled in interstate commerce, Defendant Specialty Retailers is indistinguishable from the "national" retailer at issue in *Circuit City* or the pest control franchise in *Allied-Bruce Terminix*. Working for Defendant Specialty Retailers, Plaintiff sold products which had traveled in interstate commerce. Accordingly, her employment affected commerce and was "within the flow of interstate commerce," and therefore her employment involved

7

commerce as required by Section 2 of the FAA. *See Citizens Bank,* 539 U.S. at 56 (internal quotation marks and citation omitted). As such, the FAA applies to the parties' agreement in this case.

Alternatively, Defendants argue that pursuant to New Mexico's Uniform Arbitration Act, the arbitration agreement in this case is valid and enforceable. The New Mexico Uniform Arbitration Act contains the following provision:

> An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract.

NMSA 1978, § 44-7A-7(a) (2001).[2] New Mexico recognizes a "strong public-policy preference in favor of resolving disputes through arbitration." *McMillan v. Allstate Indem. Co.,* 2004-NMSC-002, ¶ 9, 84 P.3d 65. This Court agrees with Defendants that, even if the arbitration agreement did not involve interstate commerce, it would be enforceable under the New Mexico Uniform Arbitration Act.[3]

### *Whether the Contract is Unconscionable*

The parties agree that this Court must decide whether the agreement is substantively unconscionable prior to compelling arbitration. [Doc. 22, p. 2; Doc. 26, p. 5] *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404 (1967)

---

[2] Defendants cite a portion of the New Mexico Statutes repealed in 2001 in arguing that New Mexico would enforce the arbitration agreement. The Court cites the current version of the New Mexico Statutes, which was in effect at the time the parties agreed to the "Dispute Resolution Program."

[3] This conclusion assumes the applicability of New Mexico law, as both parties focus exclusively on New Mexico law, although Plaintiff alleges that she accepted employment while residing in Texas and Defendant Specialty Retailers is a citizen of Texas.

(holding that "in passing upon a [Section] 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate"); *AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 649 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.").

According to the New Mexico Supreme Court, an "inherently one-sided agreement" which "would limit [one party] to mandatory arbitration as a forum to settle all disputes whatsoever, while reserving for the [other party] the exclusive option of access to the courts for all remedies" it is most likely to pursue is contrary to New Mexico public policy and thus "void as unconscionable."[4] *Cordova v. World Fin. Corp. of NM*, 2009-NMSC-021, ¶ 1, 208 P.3d 901. The New Mexico Court of Appeals later applied *Cordova* in holding unconscionable an agreement in which "the drafter unreasonably reserved the vast majority of his claims for the courts, while subjecting the weaker party to arbitration on essentially all of the claims that party is likely to bring." *Figueroa v. THI of New Mexico at Casa Arena Blanca, LLC*, 2013-NMCA-077, ¶ 30, 306 P.3d 480, *cert. denied*, 569 U.S. 1004 (2013). The Court further explained:

> Defendant cannot avoid the equitable doctrine of unconscionability by drafting an agreement that reserves its most likely claims for a judicial forum, and provides some exemptions from arbitration to the resident so

---

[4] The New Mexico Supreme Court recognizes both substantive and procedural unconscionability, and *Cordova* explains each doctrine in detail. *Cordova*, 2009-NMSC-021, ¶¶ 22-25. The Court in *Cordova* held that the contract at issue was substantively unconscionable. *Id.* ¶¶ 26, 32. ("Substantive unconscionability concerns the legality and fairness of the contract terms themselves.")

9

that there is some appearance of bilaterality, when that exemption is completely meaningless in practicality because the [plaintiff] would rarely, if ever, raise that type of claim.

*Id.*

However, our Tenth Circuit subsequently held that the rule set forth in *Figueroa* is preempted by the FAA. *THI of New Mexico at Hobbs Ctr., LLC v. Patton*, 741 F.3d 1162, 1170 (10th Cir. 2014). The Court stated that the rule in *Figueroa* is premised on an assumption that arbitration is an inferior means of dispute resolution as compared to litigation, *id.* at 1169, and that the Supreme Court has long forbid any refusal to find an arbitration agreement valid based on such assumption. *Id.* at 1166 (citing *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987)). This Court is bound to apply *Patton*, and therefore cannot rely on the unconscionability analysis set forth in *Figueroa*, as requested by Plaintiff [Doc. 22, pp. 2-5], to refuse to compel arbitration.[5]

---

[5] Without further explanation, Plaintiff cites an unpublished New Mexico Court of Appeals case, *Hegerty v. Skilled Healthcare, LLC*, No. 34,846, 2017 WL 1019632, *4 (N.M. App. Feb. 15, 2017) (unpublished opinion), stating merely that it "distinguishes" *Patton*. [Doc. 22, p. 3] However *Hegerty*, along with the other New Mexico Court of Appeals cases which cite *Patton* (no New Mexico Supreme Court case cites *Patton*), all state only that the New Mexico Court of Appeals is bound by New Mexico Supreme Court case law, and thus in each case the Court refused to apply *Patton*. *Id.* (rejecting the "argument that *Patton* must be applied" because the New Mexico Court of Appeals "is bound by existing [New Mexico] Supreme Court precedent); *John v. Rehab. Ctr. of Albuquerque, LLC*, No. 34,561, 2017 WL 1019478, *5 (N.M. App. Feb. 15, 2017) (same); *Dalton v. Santander Consumer USA, Inc.*, 2015-NMCA-030, ¶ 30, 345 P.3d 1086 (stating that the Court is bound by New Mexico Supreme Court decisions even when a United States Supreme Court decision seems contrary, and thus declining to address the argument based on *Patton*), *rev'd* 2016-NMSC-035, ¶ 24, 385 P.3d 619 (reversing without citing or discussing *Patton*). Unlike the New Mexico Court of Appeals, this Court is bound to follow our Tenth Circuit's holdings.

But even if the Court were to apply *Cordova* and *Figueroa*, the Court would not be persuaded that the arbitration agreement in this case is inherently one-sided. While Plaintiff submits that "[t]here is no claim than an employer can bring against an employee that is not exempted from this arbitration agreement," several such claims exist. The employer could bring tort actions against an employee, for example for defamation or negligence (i.e., negligently damaging or losing property belonging to the employer). The arbitration agreement requires both parties to resolve tort actions through arbitration. [Doc. 19-1, pp. 12-13] Further, the Court holds (in the next section) that the agreement to arbitrate applies to directors, managers and supervisors, and thus those employees would be required to bring claims for work-related intentional torts, such as assault, through arbitration.[6] [Doc. 19-1, p. 12] As to those causes of action not covered by the arbitration agreement, some are for claims which would be brought by the employee, including: "claims for benefits or other relief under the Employment Retirement Income Security Act ("ERISA"), or the Internal Revenue Code that strictly relate to any associate benefit plan sponsored by the company"; claims for unemployment; and claims for worker's compensation insurance benefits. [Doc. 19-1, p. 14] The only type of claim excluded from arbitration and expressly belonging solely to Defendant Specialty Retailers is a claim "for equitable relief for associate violation of a contract, a covenant against competition or the use or disclosure of trade secrets or other confidential information." [Doc. 19-1, p. 14] Thus, the fact that the exemptions from arbitration are

---

[6] Furthermore, if Plaintiff were sued for a tort by another coworker, and that coworker had signed an arbitration agreement with the same language as that at issue here, Plaintiff could move to compel arbitration. [Doc. 19-1, pp. 12-13]

not solely for claims belonging to the employer demonstrates that the arbitration agreement is not unconscionably unilateral. Accordingly, this Court cannot conclude that the arbitration agreement is unconscionable under New Mexico law as set forth in *Cordova* and *Figueroa.*

In sum, the arbitration agreement between the parties in this case is not unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract" under New Mexico law. 9 U.S.C. § 2. The arbitration agreement is valid and enforceable under the FAA.

### *Whether Jacque Gonzales is a Third Party Beneficiary*

The "Dispute Resolution Program" agreement states:

**What Claims Are Subject to Mediation and Arbitration?**

Instead of courtroom litigation, you and the Company must use the External Procedures in this Dispute Resolution Program (Mediation and Arbitration) to resolve work-related problems involving legally protected rights. *This includes all claims listed below that you have now or in the future against the Company, its officers, directors, owners, manager[s], partners, current or former associates, representatives, or agents.*

. . .

Examples of some claims covered by the Mediation and Arbitration portions of this Dispute Resolution Program ("Stages" 3 and 4) include but are not limited to:
- Claims for harassment (including, but not limited to, sexual harassment).
- Claims for discrimination (including, but not limited to, claims based on race, sex, religion, national origin . . . ), whether such claims arise under Title VII of the Civil Rights Act, . . . the Age Discrimination in Employment Act, . . . or any other similar laws.

. . .

- Claims for other damage or harm to person or property (including, but not limited to, any form of tort claim for physical or psychological injury, such as assault, battery, occupational injury, negligent hiring/training/supervision/retention, emotional distress or defamation), whether allegedly caused by negligence, gross negligence, or an intentional act.

. . .

- Claims for violation of any other noncriminal federal, state or other governmental common law, statute, regulation or ordinance[.]

[Doc. 19-1, pp. 12-13 (Emphasis added.)]

While one who is not a party to a contract generally may not seek to enforce the contract, an exception exists where the party seeking to enforce the contract is a third-party beneficiary of the agreement. *Woody Inv., LLC v. Sovereign Eagle, LLC*, 2015-NMCA-111, ¶ 34, 362 P.3d 107. "Whether a party is a third-party beneficiary depends on if the parties to the contract intended to benefit the third party."[7] *Fleet Mortg. Corp. v. Schuster*, 1991-NMSC-046, ¶ 4, 811 P.2d 81. "Such intent must appear either from the contract itself or from some evidence that the person claiming to be a third party beneficiary is an intended beneficiary." *Valdez v. Cillessen & Son, Inc.*, 1987-NMSC-015, ¶ 34, 734 P.2d 1258.

The Dispute Resolution Program explicitly lists claims against managers as within the purview of the arbitration clause. Defendant Gonzales was a manager. Thus, the intent of the parties is clear: the parties, including Plaintiff, intended to arbitrate any

---

[7] A third-party beneficiary is an intended beneficiary – which must be distinguished from "an incidental beneficiary: a person who is neither the promisee of a contract nor the party to whom performance is to be rendered but who will derive a benefit from its performance." *Fleet Mortg. Corp.*, 1991-NMSC-046, ¶ 4 (internal brackets, quotation marks and citation omitted).

13

claims Plaintiff may have against Defendant Gonzales. *See Callahan v. New Mexico Fed'n of Teachers-TVI*, 2006-NMSC-010, ¶ 20, 131 P.3d 51 (holding that union members were third-party beneficiaries of agreement between union and employer); *Lucchese Boot Co. v. Solano*, 473 S.W.3d 404, 414-15 (Tex. App. 2015) (holding that co-employee non-signatories to arbitration agreement were third-party beneficiaries and thus could enforce arbitration agreement against employee where the agreement "explicitly include[d] claims 'against the Company or its officers, directors, shareholders, employees, or agents in their personal or official capacities'"); *see also Gibson v. Wal-Mart Stores, Inc.*, 181 F.3d 1163, 1170 (10th Cir. 1999) (holding that employee waived claim against co-employee by signing agreement with employer not to pursue "any independent action in any court against Wal-Mart, its officers, directors, employees, agents . . . as the result of any accident"). Given the clear, express language in the Dispute Resolution Program that claims against managers and other employees must be arbitrated, Defendant Gonzales is a third-party beneficiary of the agreement to arbitrate claims. Plaintiff, therefore, must pursue her claims against Defendant Gonzales, if at all, in arbitration.

*Summary*

When she signed the Dispute Resolution Program, Plaintiff agreed to arbitrate the current claims, both against Defendant Specialty Retailers and Defendant Gonzales. The agreement itself is not unconscionable, and, as this Court is bound to apply *Patton*, 741 F.3d at 1169-70, to the extent that the New Mexico case law on unconscionability relies on a presumption that arbitration is an inferior dispute resolution forum, the FAA

preempts such case law. Both the FAA and the New Mexico Uniform Arbitration Act require that this Court compel arbitration. This Court is "satisfied that the issue involved in such suit or proceeding is referable to arbitration under [the parties'] agreement," and thus the Court must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

## CONCLUSION

**WHEREFORE**, the Court hereby:

**GRANTS** *Defendants' Motion to Compel Arbitration Under 9 U.S.C. § 3, or, Alternatively, under the New Mexico Arbitration Act* [Doc. 19];

**STAYS** this matter pending arbitration; and

**ORDERS** that the parties submit a joint status report, to be submitted by Defendants, within four (4) months of the date of this order stating the procedural status of the arbitration, and, if arbitration has not been completed, to submit a joint status report every three (3) months thereafter.

**SO ORDERED** this 29th day of May, 2018 in Albuquerque, New Mexico.

_____
M. CHRISTINA ARMIJO
United States District Judge